4 F.3d 985
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
MID-ATLANTIC WATERPROOFING CORPORATION, Plaintiff-Appellant,
v.
MCI TELECOMMUNICATIONS CORPORATION, Defendant-Appellee.
 No. 92-2573.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 8, 1993.
Sept. 13, 1993.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-92-1010-S)
 Argued: Harold Jeffrey Tabb, College Park, Maryland, for Appellant. Frederick Lewis Kobb, Wright, Constable & Skeen, Baltimore, Maryland, for Appellee.
 On Brief: Donna M. Roberts, MCI Telecommunications Corporation, Washington, D.C., for Appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and BRITT, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 The United States District Court for the District of Maryland granted the motion for summary judgment filed by appellee MCI Telecommunications Corporation ("MCI") on grounds that there was no evidence from which a jury could find that MCI engaged in "willful misconduct" with respect to its service contract with appellant Mid-Atlantic Waterproofing Corporation ("Mid-Atlantic"). Absent willful misconduct, MCI could not be liable to Mid-Atlantic under the terms of its tariff. The court also denied Mid-Atlantic's motion to amend its complaint. Mid-Atlantic appealed, arguing that the district court erred in granting MCI's motion for summary judgment and abused its discretion in refusing to allow Mid-Atlantic to amend its complaint. Finding no error, we affirm the decision of the district court.
 
 I.
 
 2
 The facts of this case, construed in the light most favorable to appellant, show that on December 6, 1989, Mid-Atlantic ordered a form of 800 service from MCI. Mid-Atlantic vice-president John Bryant placed the order, and asked MCI sales representative Erin Smith to arrange 800 service for Mid-Atlantic in six cities, including Chicago. Mid-Atlantic had in mind a system whereby callers in the six cities would call Mid-Atlantic using local telephone exchanges. Those calls would then be routed via 800 service to their termination point in Mid-Atlantic's office in Riverdale, Maryland. Mid-Atlantic believed that this arrangement would be advantageous because it would give Mid-Atlantic a "local presence" in those areas and would result in lower long distance bills.
 
 
 3
 MCI set up service for Mid-Atlantic, but instead of ringing and terminating at the Riverdale office, as MCI envisioned, calls rang into the regional Chicago office. Mid-Atlantic claims that shortly after placing the order for service, Bryant called Smith to confirm his order and was assured by her that the 800 service would ring back to the Riverdale, Maryland office. Smith did not tell Bryant that the 800 service actually terminated at the regional Chicago office. In response, MCI explained in its answers to Mid-Atlantic's interrogatories that it had no responsibility for call forwarding MCI 800 common business line numbers of the sort Mid-Atlantic had ordered. It stated that it did verify that the requested 800 number was operational, but that the local telephone company was responsible for forwarding calls to their ultimate destination in Riverdale.
 
 
 4
 Mid-Atlantic brought this action against MCI on grounds that it did not receive the service that it paid for from January to September 1990. The crux of Mid-Atlantic's claim is that MCI"verified" the line was operational when in fact it did not know whether the line was working properly. MCI "verifies" 800 numbers by calling the number; an answer, a busy signal, or rings without answer indicates to MCI that the number is operational, and MCI considers that number verified. Mid-Atlantic claims that MCI's flawed system caused callers to hear a busy signal and resulted in a loss of business. According to Mid-Atlantic, it is MCI's adherence to its verification policy that constitutes "willful" misconduct.
 
 
 5
 After the district court dismissed four of its five counts (not at issue here), Mid-Atlantic was left with a fraud claim against MCI wherein it alleged that MCI misrepresented to it that the Chicago 800 service was in working order with "reckless disregard" for the truth or falsity of the statement. On October 15, 1992, the date set by Order as the motions deadline, MCI filed its motion for summary judgment. On that same day, Mid-Atlantic filed a motion to amend its complaint to set out a new claim for willful and/or reckless breach of contract. The court denied the motion to amend on October 22 on grounds that it did not conform to the local rules (new portions were not underlined). Mid-Atlantic filed a motion to reconsider and a conforming amended complaint on October 28, 1992.
 
 
 6
 In an Order dated November 6, 1992, Judge Frederic N. Smalkin granted MCI's motion for summary judgment and denied MidAtlantic's motion to reconsider the Order denying leave to amend.
 
 
 7
 The court granted MCI's motion because "even taking the inferences in favor of the opponent of the motion, no reasonable fact-finder could find, by a preponderance of the evidence, that the defendant's failure to verify the 800 service it provided to the plaintiff amounted to 'willful misconduct,' the standard of liability which the parties agree applies in this case." Mid-Atlantic Waterproofing Corp. v. MCI Telecommunications Inc., No. S 92-1010, slip op. at 1 (D. Md. Nov. 5, 1992). The court found that the evidence showed" simply that the defendant made a mistake," and that the "sloppy business practice of the kind involved in this case simply does not equate with willful misconduct." Id. at 2. Pursuant to MCI's Tariff, MCI can be liable only for acts of willful misconduct, not negligence. (J.A. at 68.) Absent any evidence of willful misconduct, the district court reasoned, appellee was entitled to summary judgment.
 
 
 8
 The court set out several grounds on which it denied MidAtlantic's motion to reconsider. First, the motion to amend the complaint did not conform with local rules. More importantly, even if it had, it was filed on the very day motions for summary judgment were due and defendant could not have adequately responded to the new claim or filed a motion for summary judgment as to it. The court emphasized that while amendments to pleadings generally are allowed, MCI obviously would be prejudiced by Mid-Atlantic's amendment since it was filed just as MCI filed its motion for summary judgment. The court noted also that the trial was set to begin at the end of that very month, and concluded that "[l]iberal allowance of amendments does not countenance chaos and prejudice." Id. at 23. Mid-Atlantic appealed both issues to this court.
 
 II.
 
 9
 The first issue before us is whether the district court erred in granting MCI's Motion for Summary Judgment. Summary judgment is appropriate if the court is satisfied that "there is no genuine issue as to a material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating the evidence contained in the summary judgment record, the nonmoving party is entitled
 
 
 10
 to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts resolved favorably to him, the most favorable of possible inferences from it drawn in his behalf, and finally, to be given the benefit of all favorable legal theories invoked by the evidence as considered.
 
 
 11
 Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). In connection with its motion, MCI filed affidavits and other supporting materials. Mid-Atlantic therefore was obligated to establish the existence of genuine issues of material fact for trial by presenting evidence on which a jury reasonably could find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Fed. R. Civ. P. 56(e). The trial court's disposition of the motion for summary judgment receives de novo review.
 
 
 12
 Both parties offer the following definition of willful misconduct as a guide to the court:
 
 
 13
 "[Willful misconduct consists of] the intentional performance of an act with knowledge that the performance of that act will probably result in injury or damage, or it may be the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences ..., [or] the intentional omission of some act, with knowledge that such omission will probably result in damage or injury, or the intentional omission of some act in a manner from which could be implied reckless disregard of the probable consequences of the omission...."
 
 
 14
 Stand Buys, Ltd. v. Michigan Bell Tel. Co., 646 F. Supp. 36, 38 (E.D. Mich. 1986) (quoting Berner v. British Commonwealth Pac. Air lines, Ltd., 346 F.2d 532, 536-37 (2d Cir. 1965), cert. denied, 45 U.S. 983 (1966)).
 
 
 15
 Mid-Atlantic contends that its evidence, if believed, meets this standard because MCI verified to Mid-Atlantic that its long distance service for the 800 number was operational when it did not and could not have known, with absolute certainty, whether the line was properly set up to provide the service Mid-Atlantic wanted. This inability to verify that the line was fully set up to function as intended is traceable to MCI's practice of considering a line verified if, upon trying to call the number, MCI obtains an answer, a busy signal or no answer. (J.A. at 58-59.) Mid-Atlantic characterizes this practice as "deliberate, willful conduct" that surpasses negligence because MCI's policy is to state that the line is verified when in fact MCI cannot be sure that the line is working as it should be. Mid-Atlantic hypothesizes that a ring with no answer, for example, could be ringing to a wrong number, but MCI still would view the line as verified. To MidAtlantic, this policy evidences a reckless disregard as to whether verified lines in fact are operating properly.
 
 
 16
 We disagree. There is no significant, probative evidence in the available record to satisfy the Anderson standard. Contrary to MidAtlantic's allegations, the affidavit of Erin Smith, the MCI representative who arranged Mid-Atlantic's service, includes no evidence of willful misconduct or reckless disregard for probable damage to MidAtlantic. The record contains no evidence that MCI's practice commonly led to the problems at issue here; in fact, it appears to be an isolated incident. Even if there are inconsistencies in Smith's statements, as Mid-Atlantic alleges, those inconsistencies do not go to the issue of willful misconduct. We agree with the district court that available evidence simply does not support the inference that MCI knew of or recklessly disregarded any probable damage to MidAtlantic. Because the record makes clear that Mid-Atlantic cannot meet its burden on this crucial element, the trial court's ruling will not be disturbed.
 
 III.
 
 17
 We also must consider whether the district court abused its discretion when it denied Mid-Atlantic's Motion for Leave to File an Amended Complaint. Keller v. Prince George's County, 923 F.2d 30, 33 (4th Cir. 1991).
 
 
 18
 Mid-Atlantic contends that it filed its motion to amend because it first obtained the facts on which its motion was based at the deposition of Erin Smith on September 23, 1992. At the same time, MidAtlantic argues that MCI would have suffered no prejudice or surprise by the amendment because "[a]ll aspects of discovery were conducted by counsel as if this point were at issue." (Appellant's Brief at 8.) MCI responds to these inapposite theories by arguing that the finalhour amendment of the complaint would have resulted in prejudice to it and that Mid-Atlantic's delay was without justification. Both of these arguments are valid. Mid-Atlantic does not respond in any way to the district court's emphasis on the facts that the motions deadline expired on the very day Mid-Atlantic filed its motion to amend, that MCI had filed its Motion for Summary Judgment that day and would be precluded from moving for summary judgment as to the amended complaint, and that the trial was only a few weeks away. On these facts, the court acted within its discretion in denying Mid-Atlantic's motion for leave to file an amended complaint.
 
 IV.
 
 19
 For the reasons stated herein, we find no error in the district court's decision to grant appellee's motion for summary judgment and to deny appellant's motion to amend. We therefore affirm.
 
 AFFIRMED